MARY LEE, as Administratrix, etc. of Michael Lee, Deceased, Respondent, *against* BARROW STEAMSHIP COMPANY, Appellant.

(Decided April 4th, 1887.)

Plaintiff's intestate, a gangway man employed by third parties in unloading defendant's vessel, was directed by his foreman to rig up a hatch, and for that purpose selected, from defendant's storehouse, " straps," " blocks," and " whips," and rigged the same to a wire span above the deck over the hatch. The straps which held the block to the span broke, and the block, being released, struck and killed plaintiff's intestate. It appeared that the straps were affected by dry rot, a defect discoverable by inspection. *Held*, that plaintiff was not entitled to recover, it being his duty to inspect the straps before hanging them.

APPEAL from a judgment of this court entered upon the verdict of a jury and from an order denying a motion for a new trial.

The action was brought to recover damages for alleged negligence of defendant causing the death of plaintiff's intestate.

The defendant, a foreign corporation, was the owner of a steamship known as the Devonia. Plaintiff's intestate was a longshoreman employed by the firm of Henderson Brothers of New York, and worked for them as a gangway man in February, 1884. On the 20th of February, 1884, said steamship was lying at Pier 21, North River, discharging cargo. Said intestate was gangway man in charge of the hatch. Between three and six o'clock in the afternoon of that day, he got orders from the foreman to rig up hatch number 5, abaft the third or mizzen mast. He went with two other longshoremen and fellow-employes to a small house on Pier 21 where rigging was stored. They went in and selected two "whips," "straps," and "blocks" from among a large number there. These they took aboard the Devonia and, with the assistance of such two fellow-em-

ployes, the intestate rigged the rope straps to a wire span about twenty-five feet above the deck, hooked the blocks into the bights of the straps, and into these blocks rove the "whips" to run down into the hatch. The following day the intestate took charge of this hatch and superintended the work of unloading pig iron, by means of the tackle rigged as aforesaid, from 7 A.M. until about 3 P.M., when, as a draught of iron was being lifted from the hold, both bights of one of the straps on the span broke, and the block, being thus released, fell and struck intestate on the head and killed him.

At the trial, the jury found a verdict for plaintiff for $2,500. Defendant made a motion for a new trial, which was denied, and judgment was entered on the verdict. From the judgment and the order denying its motion for a new trial, defendant appealed.

*Edward C. James*, for appellant.

*A. G. Vanderpoel*, for respondent.

LARREMORE, Ch. J. — While a master is bound to exercise due care and diligence in selecting and furnishing fit implements for the use of his servants, he is not a guarantor of the safety of the machinery (*Painton* v. *N. C. R. Co.*, 83 N. Y. 7). It is not claimed on behalf of plaintiff that the tackle provided was originally of inferior quality. The contention is that the rope in question had been affected by dry rot and thereby weakened; that such defect was discoverable by inspection, and that it was the duty of defendant to so inspect and discover such imperfection. But the defendant is a corporation, and must act in this matter, as in all others, by its agents or employes, and the question arises, whose duty was it to make the proper inspection under all the circumstances of this case. I am of opinion that it was the duty of plaintiff's intestate to inspect the rope chosen by himself, before putting it to use, and, in neglecting so to do, he was guilty of negligence, which if it had resulted in

an injury to another person would have been imputable to the master, and must certainly defeat any recovery on behalf of himself or his estate. The evidence shows that the deceased, who was "gangway man," and two fellow employes went on the day named to a storehouse on the pier where all the tackle was kept, and themselves selected the "straps," "whips," etc., to be used in rigging the hatch for unloading cargo. The deceased was familiar with the appliances there at his disposal, and, being "gangway man," was charged with the duty of putting up a proper and safe rigging. Obviously, in selecting the materials to be used, he was required to inspect them, and not to use any which were unfit for the purpose. To hold otherwise would be, in effect, to say that if any worn out or defective "strap" happened to be hanging in the storehouse, no matter how many perfect ones were there also, and an employe charged with preparing a proper rigging used such defective strap without testing or inspecting it and was injured in consequence, the master would nevertheless be liable. In other words, it would be to require the master to guarantee every piece of rope that chanced to be in the storehouse. According to plaintiff's own theory, the alleged defect was discoverable by inspection. If, therefore, the rope broke by reason of such defect, it must have been because the person whose duty it was to make the examination neglected it. As this person was plaintiff's intestate himself, such negligence must prevent a recovery herein.

Plaintiff's case is not strengthened by the claim that the accident resulted from the negligence of the storekeeper. It seems that such a person was employed to take general care of the storehouses or shanties on piers 20 and 21 in which the tackle was kept and of the tackle itself. An attempt was made to show that it was the exclusive duty of such storekeeper to select the materials to be used in rigging any hatch, and that the longshoremen and stevedores were not permitted to help themselves to tackle, but were bound to apply to the storekeeper and use what he handed them. The evidence on this point is by no means satis-

factory. Plaintiff's own witnesses admit that they have on occasions taken their own tackle, and defendant's witnesses deny that it was the exclusive province of the storekeeper to select tackle for the men, and aver that his duties were merely general and supervisory, and that a " gangway man " was allowed and required to choose his own materials. But, however this may be, the storekeeper was absent when the intestate procured the tackle in question. The fact is undisputed that he and his companions selected it themselves. If he then assumed and undertook to perform the duty of another man, and injury resulted from an improper performance thereof, such injury would still be the result of his own negligence, for which of course his estate cannot recover.

I am of opinion, therefore, that in any view of the case, the plaintiff's intestate was guilty of negligence, and that the complaint should have been dismissed.

The judgment should be reversed and a new trial granted, costs to abide the event.

J. F. DALY and VAN HOESEN, JJ., concurred.

Judgment reversed and new trial ordered, with costs to abide event.